IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ANTONIO RAMIREZ-AVERASTURI, et al,**
Plaintiff

v.     CIVIL NO. 03-2360 (DRD)

**VICTOR RIVERA GONZALEZ, et al.,**
Defendants

## OPINION AND ORDER

Pending before the Court is the *Motion for Judgment on the Pleadings* (Docket No. 10) filed by co-defendant, Agustin Cartagena, in his official capacity as Police Superintendent of the Police Department of the Commonwealth of Puerto Rico (the Superintendent or Mr. Cartagena)(Docket No. 10). The Superintendent moves the Court to dismiss plaitiffs' claims against him affirming that the Court lacks jurisdiction *in personam* pursuant to the immunity afforded by the Eleventh Amendment of the Constitution of the United States of America. For the reasons stated herein, Mr. Cartagena's *Motion for Judgment on the Pleadings* is hereby **GRANTED**.

### I. FACTUAL BACKGROUND

Co-plaintiff, Antonio Ramirez-Avesturi (Mr. Ramirez-Averasturi or co-plaintiff) avers that on December 24, 2002, he decided to visit his childhood neighborhood at Borinquen Gardens. During his drive throughout the neighborhood, plaintiff parked his vehicle and stopped for a walk in the recreational and sports park. Mr. Ramirez-Averasturi affirms that during said walk he was accosted and surrounded by five individuals dressed in plain clothing who identified themselves as undercover police officers however, never presented official identifications as undercover agents. Further, Mr. Ramirez-Averasturi alleges that he was handcuffed by the individuals who then proceeded to "savagely" beat him, i.e., he was kicked violently and repeatedly, and was verbally

1

abused and humiliated. Finally, co-plaintiff avers that the individuals proceeded to illegally search his vehicle, after which, he was released without being placed under arrest or charged with any crime.

Mr. Ramirez-Averasturi received medical attention for three broken ribs and other injuries to his arms, head, back and legs and proceeded then to file an Administrative Complaint (No. 02-01-03-487) and a Criminal Complaint (No. 2003-1-462-01660) against these individuals. Co-plaintiff avers that in an attempt to obtain information relating to said individuals the information provided by the Police Department was that there was an ongoing investigation, that the identity of the aggressors was known, and that the case had been referred to the Special Investigation Bureau (Negociado de Investigaciones Especiales ("NIE")).

Co-plaintiffs filed the instant case claiming violations to Mr. Ramirez-Averasturi's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, violation of rights pursuant to 42 U.S.C. §1983, and claims for damages pursuant to supplemental jurisdiction under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§5141 and 5142. Further, the Complaint alleges that Mr. Ramirez-Averasturi's vehicle was illegally searched without warrant, that he was subject to false imprisonment and abuse of force, and that all co-defendants are jointly and severally liable for the alleged violations.

Mr. Ramirez-Averasturi further sustains that the Police Department and its Superintendent in his official capacity failed to supervise an/or train the police officers involved in the facts that gave rise to the instant claim.[1] Furthermore, Mr. Ramirez-Averasturi affirms that co-defendant Artillery Security, Inc., is liable for its failure to provide reasonable safety measures within the Borinquen Gardens neighborhood hence Artillery Security, Inc., is jointly and severally liable to co-plaintiffs.

---

[1] At the time the Complaint was filed, the Police Superintendent was Mr. Victor Rivera Gonzalez, which was latter substituted in office by Mr. Agustin Cartagena.

Plaintiffs allege that the monetary damages sustained relates to medical expenses incurred, lost wages, loss of income, pain and suffering, emotional distress, and humiliation. Consequently, plaintiffs seek monetary damages amounting to Four Million Dollars ($4,000,000.00).[2]

In its *Motion for Judgment on the Pleadings* (Docket No. 10) the Superintendent sustains that the instant complaint should be dismissed because plaintiff has failed to state a supervisory liability claim pursuant to §1983, and that he, in his official capacity and the Police Department is entitled to the Eleventh Amendment immunity.

Plaintiffs counter firstly, by stating that the complaint passes muster under the well pleaded standard set forth by Rule 8(a)(2), Fed.R.Civ.P., 28 U.S.C., and that sufficient and specific facts are alleged providing grounds for damages recovery since it complies with Rule 8(a)(2) requisites and its applicable caselaw. As to the Eleventh Amendment protection raised by the co-defendants, co-plaintiffs sustain that the co-defendants request obviated an examination of the facts plead and the reasoning behind the facts warranting the protection afforded by the Eleventh Amendment immunity. Further, the constitutional violations claimed should take precedence over any immunity that could attach.

## II.  MOTION TO DISMISS UNDER RULE 12(b)(6)

Although the Co-defendants moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., 28 U.S.C., it is well established that the Court may apply to said rule the applicable standard of review of a Rule 12(b)(6) motion to dismiss. In numerous occasions the First Circuit Court of Appeals has stated that "[M]otions to dismiss for failure to state an actionable claim are governed by Fed.R.Civ.P. 12(b)(6) ... Motions for judgment on the pleadings are governed by Fed.R.Civ.P. 12(c) and ordinarily warrant the same treatment. *See* <u>Lanigan v. Village of East Hazel</u>

---

[2] The plaintiffs to the instant case are Mr. Antonio Ramirez-Averasturi; his father, Mr. Antonio Ramirez del Valle; and his mother, Ms. Sylvia Averasturi Lugones.

Crest, 110 F.3d 467, 470 n. 2 (7th Cir.1997); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994)." Collier v. City of Chicopee,158 F.3d 601(1st Cir. 1998).  Finally, in Whitting v. Maiolini, 921 F.2d 5 (1st Cir. 1990) the First Circuit concluded that "[T]he district court was acting within its discretion in converting appellees Rule 12(c) motion for judgment on the pleadings to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  Amersbach v. City of Cleveland, 598 F2d. 1033 (6th Cir. 1979)."

Under a Rule 12(b)(6) motion standard of review, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief may be granted.  It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also Ronald C. Brown v. Hot, Sexy, and Safer Productions, Inc., 68 F.3d 525 (1st Cir. 1995); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir.1991).  The Court must accept as true all well pleaded factual averments contained in the complaint, while, at the same time, drawing all reasonable inferences from the allegations in favor of the plaintiff.  See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 276, 96 S.Ct. 2574, 2577 (1976); Berríos v. Bristol Myers Squibb Caribbean Corp., 51 F.Supp.2d 61 (D.P.R. 1999); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996);Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); Correa Martinez v. Arrillaga Belendez, 903 F.2d 49, 51 (1st Cir. 1990); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  However, "because only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).

When opposing a Rule 12(b)(6) motion to dismiss, "a plaintiff cannot expect a trial court to

4

do his homework for him." McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 22 (1st Cir. 1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. Id. at 23, *citing* Correa Martinez, 903 F.2d at 52. Thus, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988)). That is to say, a claim shall be dismissed under Rule 12(b)(6) **only if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief.** Conley v. Gibson, 355 U.S. at 78. (*Emphasis ours*).

Notwithstanding, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d at 3. The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. Litton Indus., Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim[.]" Id.; see also Rogan v. Menino, 175 F.3d 75 (1st Cir. 1998).

### III. ELEVENTH AMENDMENT IMMUNITY & § 1983 CAUSES OF ACTION
#### A. GENERALLY

Plaintiffs seek monetary damages, and attorney's fees for alleged violations of his civil rights pursuant to 42 U.S.C § 1983 at the hands of the alleged undercover agents and for the physical and emotional distress. Co-defendants counter by stating, that as long as monetary damages are sought with regard to the State, the instant causes of action should be dismissed pursuant to Rule 12(c). Co-defendants aver that this same legal principle applies to the Puerto Rico State Police Department and the Police Department Superintendent, in his official capacity. The Court agrees without any

hesitation whatsoever.

It is well known that the protection afforded by the Eleventh Amendment bars any suit brought in federal courts for monetary damages against states. This protection renders states, including Puerto Rico, immune from claims brought in federal courts by citizens of the same or any other state. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 at 267, 117 S.Ct. 2028 (1997); Seminole Tribe v. Florida, 517 U.S. 44 at 57-68, 116 S.Ct. 1114 (1996); Metcalf & Eddy v. Puerto Rico Acueduct & Sewer Authority, 991 F.2d 935 at 939 (1st Cir. 1993); Edelman v. Jordan, 415 U.S. 651 at 662-63, 94 S.Ct. 1347 (1974). However, this immunity does not solely protect the State. Rather, since a State only exists through its instrumentalities, Eleventh Amendment immunity, also, extends to arms or "alter egos" of the State. Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1036 (1st Cir.1987); see also, Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 at 280, 97 S.Ct. 568 (1977).

Notwithstanding, there is a limited number of situations contemplated as exceptions to this sovereign immunity. In essence, a State can only be sued in Federal Court if: 1) it waives its immunity, 2) it consents to be sued, 3) if Congress overrides said immunity under Section 5 of the Fourteenth Amendment, or 4) other constitutional imperatives may take precedence over the Eleventh Amendment's bar.[3] Furthermore, "a suit challenging the constitutionality of a state official's action is not one against the state." Pennhurst StateSch. & Hosp. V. Halderman, 465 U.S. 89, 104 S.Ct. 900, 909 (1984) (stating that was the holding in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908)); See also Edelman v. Jordan, 415 U.S. at 666-667. (Injunction is only available

---

[3] Suits in official capacity can also be sustained in federal court as to equitable remedies such as prospective injunctive relief and/or declaratory relief. Ex Parte Young, Id, Mills v. Maine, 118 F.3d 37, 54 (1st Cir. 1997). Ex Parte Young allows a way around the bar to federal jurisdiction erected by the Supreme Court 11th Amendment jurisprudence only in cases wherein prospective declaratory or prospective injunctive relief is sought under Federal Law. (*citing* Seminole Tribe v. Florida, 517 US 44, 73, 116 S.Ct. 1114 (1996).

governing official's future conduct, but not one that awards retroactive monetary relief, i.e., retroactive relief is barred by the Eleventh Amendment.).  Finally, a citizen may seek monetary damages against a state officer for acts done while the officer was acting in his or her official capacity, **but only if the officer is sued in his or her individual capacity**.  Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099 (1985).

In the present case, none of these exceptions are applicable.  The Commonwealth of Puerto Rico has neither consented to this action in federal court, nor has the Commonwealth waived its sovereign immunity against being sued in federal court.  Congress has not overridden said immunity and there are no constitutional imperatives that take precedence.  In numerous occasions the Supreme Court has ruled that a State is not a "person" under the definition of 42 U.S.C.S. § 1983.  For a law to abrogate the Eleventh Amendment immunity afforded to the States, Congress has to express it unequivocally in the law and only under the power granted by the Fourteenth Amendment § 5.  In Lapide v. Board of Regents, 535 U.S. 613, 617 (2002) the Court held "that a State is not a "person" against whom a § 1983 claim for money damages might be asserted." (*citing* Will v. Michigan Dept. of State Police, 491 U.S. 58 at 66, 109 S.Ct. 2304 (1989); Quern v. Jordan, 440 U.S 332, 99 S.Ct. 1139 (1979).  Finally, since plaintiff seeks monetary relief from the Commonwealth Puerto Rico and not injunctive relief, said claim is barred from federal courts by the protection provided by the Eleventh Amendment.

### B.  THE COMMONWEALTH OF PUERTO RICO

In an unbroken string of cases over the last two decades, the First Circuit Court of Appeals has consistently held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, therefore, the Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. See, e.g., Negron Gaztambide v. Hernandez Torres, 145 F.3d 410 (1st Cir.1998); Metcalf & Eddy,

Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 n. 3 (1st Cir.1993); Avilés-Martinez v. Monroig, 963 F.2d 2, 8 (1st Cir.1992); De León López v. Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir.1991); Culebras Enterprises Corp. v. Rivera Ríos, 813 F.2d 506, 516 (1st Cir.1987); Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R., 818 F.2d 1034 (1st Cir.1987); Fernández v. Chardón, 681 F.2d 42, 59 n. 13 (1st Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); Ezratty v. Com. of Puerto Rico, 648 F.2d 770, 776 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); Litton Indus., Inc. v. Colón, 587 F.2d 70 (1st Cir.1978) (action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

The primary concern behind such protection is to "minimize the federal court's involvement in disbursal of the state fisc." Metcalf & Eddy v. Puerto Rico Acueduct & Sewer Authority, 991 F.2d at 939. However, "several points, at least, are informative to our analysis. The first is that the Supreme Court has said that it is not just the state's interest in its public treasury which is a stake in the assertion of Eleventh Amendment Immunity. The state also has a 'dignity' interest as a sovereign in not been haled into federal courts." Fresenius Medical Care Cardiovascular Resources Inc. v. Puerto Rico and the Caribbean Cardiovascular Center Corp, 322 F.3d 56 at 63 (2003), citing Fed. Mar. Comm'r v. S.C. State Ports Authority, 535 U.S. 743, 122 S.Ct. 1864 (2002).

### C.  POLICE DEPARTMENT OF THE PUERTO RICO

Eleventh Amendment immunity does not solely protect the State. Rather, since a State only exists through its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State. Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1036 (1st Cir.1987); see also, Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429

U.S. 274, 280 (1977). It is well established that the Commonwealth of Puerto Rico Police Department of the is an "alter ego" or arm of the state consequently , it is immune from suits brought against it. Ramos Bonilla v. Vivoni, 259 F.Supp.2d 135 (2003); Lopez-Rosario v. Police Dept., 126 F.Supp.2d 167 (2000); Torres v. United States, 24 F.Supp.2d 181 (1998); Suarez Cestero v. Pagan Rosa, 996 F.Supp. 133, 142-43 (1998); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87 (1994); Reyes v. Supervisor of Drug Enforcement Admin., 834 F.2d 1093 (1987). It has remained ordinarily clear that the Eleventh Amendment protects a state official **acting in his official capacity**, from any retrospective claim for monetary relief, just as if it were a suit against a state, Mills. V. Maine, 118 F.3d at 54 (The Exparte Young doctrine does not apply in cases when plaintiff seek monetary relief for past violations of federal law regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity).

Because the Commonwealth's Eleventh Amendment's umbrella shields the Police Department as well, plaintiffs' monetary claims against the Police Department must be dismissed in its entirety with prejudice.

### D. POLICE SUPERINTENDENT IN HIS OFFICIAL CAPACITY

In addition to state agencies and institutions, Eleventh Amendment immunity may also attach to suits against state officials "when the state is the real, substantial party in interest." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900 (1984). Although, state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official, but, rather, a suit against the official's office. Will v. Michigan Dept. of Tate Police, 491 US at 58; Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873 (1985). As such, a suit against a state official in his official capacity is no different from a suit against the State itself therefore, the Eleventh Amendment's immunity attaches to state officials acting in their official capacity. See also,

Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S.Ct. 309 (1985); Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978); Gotay Sanchez v. Pereira, 343 F.Supp.2d 65(2004); Ramos Bonilla v. Vivoni, 259 F.Supp.2d 135 (2003); Lopez-Rosario v. Police Dept., 126 F.Supp.2d 167 (2000); Torres v. United States, 24 F.Supp.2d 181 (1998); Suarez Cestero v. Pagan Rosa, 996 F.Supp. 133, 142-43 (1998); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87 (1994); Reyes v. Supervisor of Drug Enforcement Admin., 834 F.2d 1093 (1987). In emphasizing this matter the District Court for Puerto Rico has stated:

> It has been established that if a state has a legal obligation to satisfy judgments against an institution out of public coffers, the institution is protected from federal adjudication by the Eleventh Amendment. See Quern v. Jordan, 440 U.S. 332 (1979); Reyes v. Supervisor of DEA, 834 F.2d 1093, 1097-98 (1st Cir.1987). However, in terms of suits against an employee in his or her official capacity, as in the case at bar, it has been well established that an official capacity suit against an officer is treated as a suit against the governmental entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978); Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) ("a judgment against a public servant 'in his official capacity imposes liability on the entity that he represents....' "). Therefore, it is clear that a suit against an employee in his official capacity cannot lead to liability against the governmental entity.

Gotay Sanchez v. Pereira, 343 F.Supp.2d at 72.

Since 1908, the Supreme Court has recognized that in certain circumstances a federal court can impose prospective injunctive relief against state officials in their official capacity to prevent them from future violations of federal law. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908). It has remained abundantly clear, however, that the Eleventh Amendment protects a state official acting in his official capacity from any claim for retrospective monetary relief, just as if it were a suit against the state itself. Mills v. Maine, 118 F.3d 37, 54 (1st Cir.1997) ("Ex parte Young allows a way around the bar to federal jurisdiction erected by the Supreme Court's Eleventh Amendment jurisprudence only in cases where prospective declaratory or injunctive relief is sought under federal law."). More over, the Mills court stated that "[T]he Ex parte Young doctrine does not apply in cases

10

where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity." Id.

Since the present action only seeks to obtain monetary relief and not prospective injunctive relief, the action against the Commonwealth of Puerto Rico's Police Superintendent, in his official capacity, is barred by the Eleventh Amendment, hence plaintiffs' monetary claim should be dismissed with prejudice.

### IV. SUPERVISORY LIABILITY

Senior District Judge Pieras held in Ramos Bonilla v. Pierre Vivoni et al., 259 F.SUpp.2d 135 (1st Cir. 2003) that a supervisor may be found liable **under § 1983 only on the basis of his or her personal (as opposed to official) own actions or omissions**. See, Seekamp v. Michaused, 109 F.3d 802, 808 (1st Cir. 1997). By merely establishing the existence of an employment relationship between a supervisor and a subordinate is not enough to establish supervisory liability. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct 1197, 1202-03 (1989). Consequently, for a plaintiff to establish a cause of action under the supervisory liability doctrine, it must establish that: "(1) the behavior of the subordinates results in a constitutional violation and (2)the supervisor's action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence of the supervisor amounting to deliberate indifference'". Hegarty v. Somerset County, 53 F3d 1367, 1379-80 (1st Cir, 1995)(quotations omitted).

Hence plaintiff has either to establish that the supervisors actions, could be perceived as an encouragement, or approval of the subordinate's actions, or that the supervisors failure to act amounted to deliberate indifference which in turn requires a plaintiff to show "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3)his failure to take

easily available measures to address the risk." Camilo Robles v. Hoyos, 151 F.3d 1, 7(1st Cir. 1998). Furthermore, an element to be considered when evaluating whether supervisory liability attached, is to determine if the supervisor "was put on notice of behavior which was likely to result in the violation of ... constitutional rights." Camilo Robles v. Hoyos, 151 F.3d at 7. In other words, the causation requirement must show that the supervisor's conduct "led inexorably to the constitutional violation". Hegarty, 53 F.3d at 1380.

However, supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior. Camilo Robles v. Hoyos, 151 F.3d at 6-7. The supervisor may be liable if it is established that he either formulated a policy or engaged in a practice that leads to a civil rights violation committed by the subordinate. Hence, as previously concluded by this Court, "[p]laintiff ultimately bears the burden of establishing that [the Police Superintendent, Mr. Agustin Cartagena]: established such an unconstitutional policy and carried it out; personally discriminated against him; or displayed deliberate indifference, measured by whether it 'would manifest to any reasonable official that his conduct was very likely to violate and individual's constitutional rights'" Ramos-Bonilla v. Pierre Vivoni, 259 F. Supp 2d at 142. *quoting* Hegarty, 53 F.3d at 1380; Febus-Rodriguez,14 F.3d at 92. [4] The Ramos-Bonilla Court further found that plaintiff failed to establish that co-defendants Haddock and Vivoni displayed deliberate indifference to the alleged constitutional violations. Furthermore, the Court determined that plaintiff failed to connect any act or omission that could be attributed to either Vivoni or Haddock with the alleged violating conduct that gave rise for the Complaint. Thus, failing to establish the affirmative link required in this case.

---

[4] On said occasion the Court found that plaintiff had failed to demonstrate defendants' alleged policy favoring civil rights violation to pro American citizens, and the Police Department's "clear and manifest favor toward 'lefties'"..."Plaintiff has not shown the existence of an illicit custom that was so widespread as to constitute the force of law." Ramos Bonilla v. Pierre Vivoni , 259 F. Supp 2d at 143. However, the Court notes that on said occasion, the Court was addressing a Summary Judgment whose standard of review is significantly different to that of a Motion to Dismiss.

Id.  The Court concluded that "***the mere fact that these two officials were present at the site of the incident does not automatically demonstrate [...] that they were 'personally involved'***."Id. *(Emphasis added)*. Accordingly, the Court found that the plaintiff failed to establish supervisory liability and **dismissed with prejudice** any claims of supervisory liability against Pierre Vivoni and Carlos Haddock.

In the instant case, the undersigned has thoroughly examined that allegations made by plaintiffs and deems that plaintiffs' claims have run afoul as in the Ramos-Bonilla Court.  First, the Police Superintendent is only sued in his official capacity.  This by itself would normally bar any further analysis to the conundrum.  Second, plaintiffs averments do not address that Mr. Cartagena displayed deliberate indifference to Mr. Ramirez-Averasturi constitutional violations.  Third, plaintiffs neither aver that the Superintendent either formulated a policy or engaged in a practice that lead to a civil rights violation committed by the subordinates.  Last, plaintiffs have failed to show that the Superintendent's actions could be perceived as an encouragement, or approval of the subordinate's actions.

Consequently, plaintiffs have failed to establish causation between the acts committed by the undercover agents [the subordinates] and their supervisor.  In other words, the "affirmative link" requirement that must be set forth by plaintiffs have fall short of meeting the required threshold.  By merely establishing the existence of an employment relationship between a supervisor and a subordinate is not enough to establish supervisory liability.  City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct 1197, 1202-03 (1989).  Plaintiffs' allegations against the Superintendent merely establish that the Superintendent was the supervisor of the undercover agents; that the Police Department and the Superintendent are jointly and severally liable to plaintiffs for violations pursuant to the First and Fourteenth Amendment and for violations under §1983; and that the Police Department and the Superintendent failed to train and/or supervise the undercover agents who

participated in the facts that gave rise to the instant complaint. Evidently, merely establishing the existence of an employment relationship between a supervisor and a subordinate is not enough to establish supervisory liability. Canton, 489 U.S. at 385, 109 S.Ct at 1202-03. Therefore, Mr. Ramirez-Averasturi claims against the Police Superintendent in his official capacity under supervisory liability should be dismissed without prejudice as he has yet to be sued under personal capacity.

### V. CONCLUSIONS

It is indisputable that, as explained above, in the absence of a waiver, the Eleventh Amendment bars actions for money damages against an arm or "alter ego" of the Commonwealth, barring thus, Plaintiffs' purported recovery of monetary damages against the State. Moreover, said immunity bars the recovery of damages against state agents sued in their in official capacity where, undoubtedly, recovery will come from the public fisc. Kentucky v. Graham, 473 U.S. 159 (1985).[5]

The Eleventh Amendment precludes such actions for money damages, therefore, the Court finds that actions for money damages against Agustin Cartagena, in his official capacity as Police Superintendent are hereby **DISMISSED WITH PREJUDICE**. Likewise, plaintiffs' monetary claims against the Police Department are hereby **DISMISSED WITH PREJUDICE** since it has been clearly established that the Commonwealth of Puerto Rico's Police Department is an arm or "alter ego" of the Commonwealth. Finally, since plaintiffs have failed to meet the threshold required to prevail in a supervisory liability claim under a §1983 violation, the claims against the Police Superintendent are hereby **DISMISSED WITH PREJUDICE**. The cause of action against co-defendant Cartagena in his personal capacity recognized by the Court on this date cannot be

---

[5]"When a suit seeks equitable relief or money damages from a state officer in his official capacity for injuries suffered in the past, the interests in compensation and deterrence are insufficiently weighty to override the State's sovereign immunity." Will, 491 US at 89-90; see also, Papasan v. Allain, 478 U.S. 265, 278 (1986); Green v. Mansour, 474 U.S. 64, 68 (1985); Edelman v. Jordan, 415 U.S. 651, 668 (1974).

14

dismissed.

Therefore, for the reasons stated herein, the co-defendants' *Motion for Judgment on the Pleadings* (Docket No. 10) is hereby **GRANTED**. The Court stresses, however, that the instant case will proceed relating to all other claims brought forth by Plaintiff.[6]

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 8th day of September 2005.

S/DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

[6] The Court will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. See Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule . . . furthers 'the strong congressional policy against piecemeal review.'" Id. (quoting In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)); see also United States v. Nixon, 418 U.S. 683, 690 (1974).